I am Robert McCoy and I do represent the City of Pekin, the appellant in this case, and the City of Pekin is appealing the denial of the trial court of its request to stay arbitration of a labor grievance dispute. The City has taken the position that this grievance which the union, the Policemen's Benevolent Labor Committee, seeks to arbitrate is barred by a prior arbitration of the same matter, where there was an arbitration and a final award issued by arbitrator Reynolds. And we've made two arguments. One is that this matter now, the second grievance, which the union is seeking to arbitrate, is barred under the doctrine of res judicata. And the second argument is that we have no agreement to arbitrate where we have already arbitrated. So whether or not the technical elements of res judicata are met, where we have already arbitrated under our contract, the collective bargaining agreement, there is no obligation for us to arbitrate again. The union has only addressed in its brief the res judicata issue, but it has not addressed the Johnson v. Baumgart decision which we cite saying that you don't have to arbitrate against what you have arbitrated in issue. But wouldn't there have to be an identity of subject matter? There would have to be an identity of subject matter, and there is an identity of subject matter. I think to understand this, the first thing we have to understand is the prior grievance. And what happened in – there was a grievance filed by Officer Chris Bittner seeking reimbursement of his tuition and costs, books, tuition, all costs associated with his enrollment in a doctoral program for public administration. And he sought in his grievance all tuition, all books. And that was his grievance. The union or Mr. Bittner was the author of this grievance seeking the whole shebang. That he alleged that he was denied that reimbursement solely on his basis of it being a doctoral program. He had been awarded priorly his tuition costs and book costs for a master's program, the same sort of program, and that was on the doctoral level, and the police chief denied it. And he says it's, you know, I'm denied solely because it's a doctoral program, and I take that on face value. The police chief and the city administrator said, no, we don't think that this is really for police businesses. This is for advancing your career. We are not going to approve this program. And the agreement provides three things for reimbursement. It says you have to have a program that's related to police matters. It has to be approved by the police chief. And then once it's been approved, once you can attain a C grade or above, you'll be reimbursed. And I anticipate the union will say, well, we don't have the grades for this latest semester. Well, Officer Bittner filed his grievance before he had even had a single grade and seeking all tuition. And the arbitrator in this decision, Arbitrator Reynolds, makes findings of fact on page five of his arbitration. I don't know the C record, common law record citation, but it's page five of the arbitrator's award saying that, you know, in the past, the city reimbursed Bittner for books and tuition for all courses in his master's degree. The city did not go through a course-by-course analysis with Bittner over these classes. What happens is the police says, no, we are not going to pay for this program at all. The union files an untimely grievance, according to Arbitrator Reynolds. And under the party's agreement, there's a provision that if the grievance is untimely appealed to the next stage, the last employer's stand is the final statement. That's the resolution of the issue. So the employer's last statement to Mr. Bittner was, no, we are not going to approve this program. There was untimeliness. Now, some of this is contained in the arbitrator's findings of fact. But the grievance is Officer Bittner seeks reimbursement for the entire program. And then the award portion is the grievance is denied. And that's significance, because although the opinion discusses the timeliness issue in length, although after making some findings of fact, the law is as cited in our brief, which the operative portion of the arbitrator's decision is the award. And even if the analysis is flawed, and I don't think it is flawed, but even if the analysis is flawed, you look at the award, and that is the basis of what we say is important for what's residue to codded here. So how do you characterize the actual award? The award is the grievance is denied. The award is labeled so. It's on page 16 of the arbitrator's decision. And he says, for the reasons stated in this opinion and award, and under the authority vested in the arbitrator, I hereby deny grievance number 012605 involving Officer Chris Bittner's request for tuition reimbursement. Okay. But do you have to look at the reasons behind that denial? I think it's a mistake, because we decided it's in case law, but I think just like courts, not all the reasoning might not get into the written decision. Well, I guess I'm drawing an analogy with what happens with courts of review, is that the court decides it on an issue and then says, but let's go off on a lark and we'll start talking about other things, even though the decision, the gravamen of the decision is this narrow area. What's wrong with characterizing this award as simply, there's nothing substantive here that I can decide because procedurally you're untimely. Because you represent that you have to have approval of the chief, you have to have a C grade. There was a third problem. It has to be related to law enforcement. Okay, related to law enforcement. But the substance of the grievance, as I understand it, was that the officer is saying, there's really nothing different between the substance of this program and the program that has been approved. And so that basically I'm grieving the presented rationale for the denial. Is that what, in essence, was? I think the operative, maybe I'm missing a question. We'll have to seek clarification. But I think the operative part is the award, which says the grievance is denied. What the grievance was, was all tuition and books. But timeliness is a substantive issue because we have an agreement here as well that provides that if a grievance is untimely, the employer's last position stands. And the employer's last position was, this is not an approved program. I understand that. But timeliness is almost jurisdictional. It would be jurisdictional for an arbitrator. So, in effect, the analogy is there's no jurisdiction because it's untimely? I don't think the prior decision would stand because you couldn't get a review of it because timeliness was a bar. Well, I think what jurisdiction isn't helpful because we're dealing with a contract here. And we have a contract that provides what's the effect of untimeliness. And the arbitrator was charged to find out whether this is timely or not, make a decision whether it's timely or not if that's presented, and the effect of being an untimely. And I think the effect of being an untimely arbitration request is the grievance is denied. And jurisdiction, I guess. But can you apply the concept of race judicata to a decision made by the chief? Because that's what we've come back to. Yes, because we have a decision by the chief, but we have an award by the arbitrator. And the award is upholding the decision of the chief. We have an award of an arbitrator. It's not really upholding the decision of the chief. If arguably it's untimely, there couldn't even be a decision rendered by the arbitrator. Is something wrong with that reasoning? In that effect, the de facto effect is that the chief's decision as to that. I don't think jurisdiction is quite right where both parties agree this is something that the arbitrator has to decide. The timing of this issue and also the effect of whether or not this is timely. But even if you use that jurisdictional, say it's untimely, it's then akin to a statute of limitation. And I think we have clear decisions that say race judicata can apply. It's an involuntary dismissal. And it's the de luna case we cite. An involuntary dismissal, except for exceptions in the statute of limitation, is not one of them. And untimeliness is not one of them, or limitation is not one of them. It can have residue to the effect. So even if you say it's a dismissal for untimeliness and they did not reach the merits, and I think it's a stretch. I think he said they did reach the merits. I think he said, you know, we're not going to grant this program. But even if you say we don't reach the merits, it's because of timeliness. The de luna case says, well, that is still a judgment on the merits. Timeliness is a judgment on the merits. An involuntary dismissal is a judgment on the merits. And it does have residue to cata effect. But is the officer now grieving that? The officer is now grieving the denial of the second semester or the second years. I'm trying to say, well, my response to that is basically that they've changed their tune. We have an initial grievance authored by Chris Bidner or the union saying, I want all tuition. And we have a response by the city saying, no, this program is not applied. So grades do not matter. And we do have findings of fact by the arbitrator as I read about how they handled the master's program. You know, it was approved at once. And then it's sort of automatic. If you've got an approved program, you just submit your report card and they pay it off. But here, if Bidner got all As, A pluses, it doesn't matter when you don't have an approved program without chief approval or a finding that's related to career goals. It doesn't matter. The grades become irrelevant at that time. So even though the grade issue is not something. Here's the question. Are all of those things you just said, are they arbitrable? The chief's approval, the relevancy of the curriculum to the activities of an officer. Are they not all subject matter, subject to arbitration? Those are subject to arbitration and they are arbitrable and they've been arbitrated. That's our position. Okay. That's your position. They are arbitrable and they are, therefore, properly been arbitrated and an award addresses those. And now, because they have been arbitrated, the grades do not matter. And it's interesting, but is there anything in that first arbitrator's decision that talks about those concepts and why they should not, you know, why it's not relevant? There are some findings and facts, but I think the award is still the crucial part. I mean, there is the fact finding that this is how they handled things in the past, where with the master's program you got it approved and then you just submit the grades and that's sort of automatic. Mr. McCoy, wasn't there an earlier appeal? There was an earlier appeal and it was dismissed on a very technical grounds. I raise the motion. I almost feel guilty because I feel like it was a lot more litigation than necessary, but I think it was right and the court agreed that the prior court's order did not specify it was compelling or staying arbitration. It made a ruling on the summary judgment but did not say I'm compelling arbitration or I'm staying arbitration. And that's necessary for an interlocutory appeal. So there's an interlocutory appeal taken by the union. It went back to a different trial court judge and Judge Schwartz saw it differently than I think it was Judge Barra. It was not involved in the trial court proceedings. Wasn't there a finding that the appeal was only of the 2005 reimbursement? There were statements in this court's order that would suggest that I would take this as a dicta. I don't think they were relevant to the finding that this court did not have jurisdiction. I think they were wrong. I think you have to look at the actual grievance documents that are in the common law record where you say I'm appealing all my costs of tuition, all my folks in tuition, and that's what's crucial there. Then now the union is taking a position for us. Well, we lost them down. What can we do? We'll say the grades are important and try to split it. I don't think that's allowed. We cite the Smona case, the City of Rockford case, the Amalgamated Transit Union Local 313. Interesting that one had the union there and the Amalgamated Transit Union Local 313. The union tried to say slightly different versions about what the issue was of bus drivers being assigned from large buses to small buses, and there were actually different named grievance. Here we have the same grievance. We have the same doctoral program, same parties. I think we have a better case, actually, for res judicata than the Amalgamated Transit Union Local 313. But regardless of all those, this is the res judicata. As I said, there's a second problem that has not even been addressed by the union, and it's brief, is that the parties sort of set the parameters of what they're arbitrating. Maybe it would be a difficult question if Chris Bissner had decided to say, I'm going to do this piece by piece. But he submitted a grievance all in whole. The city, in good faith, said, okay, we're going to take that, and we're going to arbitrate that, and an award was issued. And we do not have an agreement to re-arbitrate. And the Johnson v. Bongard says, you know, you can only be compelled to arbitrate when there's agreement to arbitrate, and you can't be compelled under that agreement to re-arbitrate. And, you know, I think the crucial thing is once this program has been denied and that award has been upheld denying that, whether it's timeliness or any other basis, and we have just the award as the operative part. Once it's been denied, Bissner's grades don't matter because the program is not approved. And, as I said, it might have been harder. Would it have been fair for him to file these grievances piecemeal? We probably would have objected to that, honestly, if he filed them piecemeal. But it would be a more difficult case. He decided to file it all as one. And it's interesting. He filed his grievance prior to getting his first grades. I have a last question. I'm sure you're familiar with the Ford v. Cornfield case. Do you believe that that's the case where the second district has said the decision of whether or not race judicata effect is imposed here is not for the court, but it's for the arbitrator? They say that's the truth under federal law. I'm not going to argue whether it is true or not. I didn't do a lot of research. But they say the result is different under Illinois law, and they cite Illinois cases. So I think the unions take the position that we should have an arbitrator decide whether race judicata. The Ford credit says it's a court decision whether race judicata applies under Illinois law. But here we're applying the Federal Arbitration Act. But wouldn't it be better, as Justice Holder said, with all these questions of facts and things that maybe were not brought before the trial court in the first round, the initial arbitration, that these would be issues better decided by the arbitrator? No, I don't think so, because what we have basically is a collateral attack on the arbitration award. Denied in the whole. Some of the arguments were made, you can see from reading the decision. But the award, I wish it had said more, perhaps. But the union could have attacked the award and said, you haven't decided every issue before us, or address this, please, or remand it to the arbitrator. There's a time limit under the Uniform Arbitration Act for seeking to vacate the award or remanding it. They didn't do so. And so now we have piecemeal. Let's hope we get another result from a different arbitrator in maybe semester three. We'll get yet another result in semester four. You know, I think it's better that they should have attacked this award if they thought something was wrong with this award. It wasn't attacked. It's been confirmed. They haven't appealed the confirmation by the trial court of this award. So I think it should have been all addressed in one arbitration. And that's sort of the policy, if you remember. Everything that should have been raised, that could have been raised, should have been addressed. And if there was a deficiency in this award, it should have been attacked instead of collateral. We'll try again before a different arbitrator. And we'll try again next semester and the semester after that. Thank you. Thank you, Mr. Boyd. Mr. Boyles? Mr. Boyles? You may respond. I would like to kind of maybe go back to the beginning as it were. Plaintiff didn't really address the standard of review here. And I believe I cited that Ford Motor Credit case for that purpose and not to challenge Monmouth. Monmouth says the court decides whether or not race judicata applies. Ford Motor Credit discusses a different rule, but I believe I cited it for the standard of review. And the standard of review is dependent upon, in these types of cases, whether or not the court is being asked to decide a question of fact. The plaintiff has argued that de novo review applies because there's no question of fact to be decided or that there was no question of fact decided. And then for a good several minutes this morning, plaintiff discussed the arbitrator's award and was arguing facts to the court. That would seem to indicate that the abuse of discretion standard applies rather than the de novo standard, which is what we argued in our brief. Now, with regards to, plaintiff said this was the same matter. I'm going to try and do this with objects rather than talking about this purely without any sort of physical reference. I have two highlighters. They're made by the same company. They look awfully the same. The writing is not quite exactly the same. For example, if I dropped this one on the floor of the Chicago cab and this one I didn't, somebody might refuse to write this highlighter. It may work perfectly fine, but they may say, I don't want to touch that highlighter. If I try to change the caps or I try to wash it off, it doesn't matter. We're not using this one. This one's over with. It's kaput. Does that mean this one's bad? And that's really what this case is about. The two claims are similar. They look an awfully lot alike, but they are different. Res judicata means this one is forever hard, and there's no question about that. But what the plaintiff is trying to do is they're trying to achieve collateral estoppel and they're using res judicata rules to do that. Now, your opponent's saying that the subject matter of the first arbitration was all aspects of the program. Correct. Both highlighters. Correct. They're trying to bar this one by resorting to, well, it's the same issue. That's really what the essence of their argument is. Why is it not the same issue? It's one program, one degree, one curriculum. It is the same issue, but that's collateral estoppel. And for collateral estoppel to apply, there has to be a judgment on the merits. We don't have that here. Because the first arbitrator, you're saying, limited himself to only what you call procedural requirement. Correct, and that's what the trial court found. There are ten pages, there are ten paragraphs worth of discussion. The arbitrator never touches the merits in any of his discussion of the issue. And there were two issues and he only reached the first one. If he had decided the first case on the merits, then the plaintiff could very well be correct. The issue could be foreclosed forever. But that didn't happen. They're using a res judicata rule where the first judgment is basically deemed to be on the merits for res judicata purposes. But it's not for collateral estoppel purposes. They're two different theories. And what about the argument of opposing counsel that this is a statute of limitations in your indentment? I don't necessarily disagree with that, but that ties back into his res judicata. This first award has res judicata effect. It wiped out that first claim. And it also has collateral estoppel effect, too. We know if we file an untimely or don't file the timely submission in the future, we know what's going to happen based upon the first award. So it does have some sort of issue preclusion effect as well. But that first claim is done. We can't dress it up. We can't change the clothes that it's in and present it back to the arbitrator. And I really think that's what that Monmouth case discusses. If you compare, the court does a very good job of differentiating between collateral estoppel and res judicata. And when it gets down to the end, it doesn't really explain whether Poland was denied forever any step advancements. And I really don't think the case stands for that position. She was denied from 1981 to 1982 forever. If you're talking about a stair-step scheme, I don't think the court's decision meant that in 2002 she's still earning 1982 wages. I think it meant she was always one step behind. And there was nothing that could ever be done about that because of the res judicata effect of the first award. We have overtime provisions in the contract. Under the city's analysis, if Officer Bittner had turned in for overtime and we took that to grievance arbitration, and the chief had said, you know, this wasn't approved by your sergeant, so from now on it's not approved by your sergeant, we're not going to pay the overtime. And we took that to arbitration, and the arbitrator said to grievance, what's the time? Well, then under the city's reasoning, each new occurrence of Officer Bittner working overtime, where a sergeant didn't check the bottom of the box, he can never grieve. He's forever barred. We are in a collective bargaining relationship. These sorts of things happen again, sometimes with the same people. The city is really, they're taking this res judicata rule and using it to achieve a collateral estoppel effect. And that's not what MAMA stands for. That's really all I have. Thank you. Okay, thank you, Mr. Boyle. Mr. McCoy, you may reply. Thank you. I think this Court understands. I mean, what we had was, yes, the two markers. If we had a grievance, is the city going to pay for both markers? And the grievance was, are you going to pay for both markers? And the ward says, no, the city doesn't have to pay. And the union cannot come back and say, are you going to pay for one marker? After that, are you going to pay for half a marker? And keep on splitting it. That's what res judicata is meant to prevent claims splitting. And it has a preclusive effect whether or not the merits are reached. We had the Deluna case saying that. It says that the courts do not hesitate to deny, sometimes for good cause, a litigant's stay in court. And that has preclusive res judicata effect. But doesn't the why matter? I mean, I think that's the crux of opposing counsel's argument is that if it's res judicata or collateral, you really have to get to the reason why aren't we paying for this. If it's out of the merits because we've gone through that he's just doing it for his personal benefit and it's not going to benefit the Pekin Police Department and there's no benefit to it, then I think you get to the why. But if you get to it didn't come here in time, so procedurally you're not able to proceed with your argument on the merits, then don't we have a different outcome? No, I don't think so. I think you could have two situations. We could have had this arbitration and the arbitrator says, I give an explanation in his award. It says, I'm not going to grant this grievance because I do not think this is related to police business, this doctoral program. I think you're doing it for your own career advancements outside of the police advancement. So I'm going to deny this for that reason. And it's sort of on the merits denial. And it says, so I've denied the whole entire program. Or we could have a situation where the arbitrator gets more explanation in his decision and says, I'm denying this, the entire program, because of the timeliness. In either case, there is a denial of the entire program. In either case, the union cannot come back and seek reimbursement for this program for this grievance. Same program, same grievance. Whether it's timeliness or you consider it something more on the merits and the DeLuna case says, you still have res judicata, whether it's merits or timeliness. Those still can have res judicata effect. So we could have had these two alternate universes, same effect, where they saw it in the first arbitration, the entire award. I just want to speak briefly on this standard review. We've cited cases where this is de novo. I don't think you have a fact dispute just because there are facts in the records. We have documents here. Whenever you have ‑‑ I think it's helpful to think about this. And we have directly cases I urge you to look at. I'm sure you have. But analogous to summary judgment, there may be facts in documents, but there is no difference in the ability of this court, of the trial court, to read and see the effect of those documents. The Yandel case cited by the appellee was a case where there was an issue of whether, by conduct, the insurance company had waived an arbitration clause, and they're apparently hearing on that issue of conduct. And I think that's a more subjective weighing the witness testimony kind of decision here where we have a bunch of documents here. So I think the de novo standard is a case I did not cite for this proposition, but I did cite the case. The Northeast Regional Commuter Railroad Organization versus Chicago Union Station Company says residue caught in determination and arbitration is de novo. I think it falls squarely within that. And I just don't think the other standard makes intellectual sense under the circumstances. Thank you. Thank you, Mr. McCoy. Thank you, both counsel, for your arguments in this matter this morning. It will be taken under advisement and a written disposition will issue and the court will stand adjourned.